Martha M. MENZEL; Mary B. Rice, Appellants,

and

Barbara G. Racine and Virginia W. Grubbs, Plaintiffs,

v.

COUNTY UTILITIES CORPORATION, Appellee.

No. 82–1677.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1983.

Decided July 13, 1983.

Rehearing Denied Sept. 28, 1983.

---

Patrick M. McSweeney, Richmond, Va. (McSweeney, Stutts & Burtch, Richmond, Va., on brief), for appellants.

E. Leslie Cox, Norfolk, Va. (Robert R. MacMillan, Breeden, Howard & MacMillan, Norfolk, Va., on brief), for appellee.

Before HALL and PHILLIPS, Circuit Judges, BUTZNER, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

In this action brought under the citizens' suit provisions of the Federal Water Pollution Control Act (the Act), 33 U.S.C. §§ 1251–1376, plaintiffs appeal from an order of the district court granting defendant *County Utilities's motion for summary* judgment. Finding that there remain genuine issues of fact regarding whether County Utilities has complied fully with federal law, we reverse the judgment and remand to the district court for further proceedings.

I

County Utilities operates a sewage treatment system in Virginia Beach, Virginia, which discharges treated effluent into Buchanan Creek, a tributary of the Lynnhaven River. In December 1977, plaintiffs instituted the present action pursuant to 33 U.S.C. § 1365 against County Utilities, alleging that the effluent discharges were in violation of 33 U.S.C. § 1311 because County Utilities did not have a valid National Pollutant Discharge Elimination System (NPDES) permit as required by 33 U.S.C. § 1342. Soon thereafter, the Virginia State Water Control Board (SWCB) decided to issue[1] to County Utilities an

1. States are specifically empowered to administer the NPDES program. *See* 33 U.S.C. § 1342(b).

NPDES permit; plaintiffs then amended their complaint to allege generally that the discharges into Buchanan Creek violated 33 U.S.C. § 1311.

The NPDES permit was issued to County Utilities on January 8, 1978, with an effective date of July 1, 1977.[2] In addition to embodying federal water pollution discharge standards, as required under the Act's permit program, see 33 U.S.C. § 1342(b), the NPDES permit issued by the SWCB imposed standards for nitrogen discharge more stringent than those mandated by federal law.[3] Accordingly, County Utilities brought suit to challenge these nitrogen discharge standards against the SWCB in the Circuit Court of the City of Virginia Beach, which ordered the NPDES permit "stayed ab initio" pending resolution of the dispute.[4]

In July 1978, plaintiffs moved for summary judgment on their federal cause of action. The district court, confronted with the pending state court challenge to the NPDES permit terms, denied the motion for summary judgment and stayed further proceedings to await decision from the state court regarding the validity of the permit. On June 8, 1979, the Virginia Beach Circuit Court decreed that the SWCB had imposed nitrogen discharge requirements neither technologically achievable nor economically feasible, and issued an order modifying County Utilities's NPDES permit to eliminate the stringent nitrogen limitations but otherwise keeping it intact and in conformity with federal law. The court dissolved its stay of the SWCB action and gave the NPDES permit retroactive effect to November 15, 1976.

Plaintiffs and County Utilities then filed cross motions for summary judgment with the district court, which ordered the proceedings stayed pending outcome of the appeal by the SWCB to the Virginia Supreme Court from the ruling by the Circuit Court of Virginia Beach. After the Virginia Supreme Court affirmed the Circuit Court decision, see Commonwealth ex rel. State Water Control Board v. County Utilities Corp., 223 Va. 534, 290 S.E.2d 867 (1982), the parties renewed their cross motions for summary judgment. In June 1982, the district court granted summary judgment for County Utilities, from which plaintiffs now appeal, on the basis that: (1) County Utilities had not been discharging without a permit in violation of federal law because the NPDES permit, as modified by the Circuit Court of Virginia Beach, had been given retroactive effective to November 1976; and (2) plaintiffs had failed to allege that County Utilities was violating the federally established effluent limitations contained in its NPDES permit, and therefore could not obtain resolution of the issue.

## II

We understand plaintiffs' argument on appeal to raise two distinct issues. The first is that County Utilities was discharging without an NPDES permit for the period before the SWCB issued the permit and also for the period during which the permit was stayed by the state court. The second is that County Utilities failed to submit discharge-monitoring reports for the period at issue, in violation of the requirements of its NPDES permit.

We first outline the relevant statutory requirements before addressing these contentions on the merits.

## A

The Federal Water Pollution Control Act forbids any pollutant discharge into the

---

**2.** Apparently, County Utilities's prior NPDES permit had expired on June 30, 1977, necessitating that the January 1978 permit be issued retroactively. On oral argument, the parties seemingly disagreed as to whether County Utilities's earlier permit had in fact expired; this remains an open factual question on the remand we order.

**3.** The Act vests the states with authority to impose more stringent effluent limitations than are required by federal standards. See 33 U.S.C. § 1370.

**4.** The state court challenge to the NPDES permit terms was filed in February 1978; the order staying the permit was issued in August 1978.

nation's waterways except in accordance with a valid NPDES permit. *See* 33 U.S.C. § 1311; *EPA v. California ex rel. State Water Resources Control Board,* 426 U.S. 200, 205, 96 S.Ct. 2022, 2025, 48 L.Ed.2d 578 (1976). States are empowered by the Act to assume responsibility for administering the NPDES permit program, *see* 33 U.S.C. § 1342(b), and Virginia has been so certified, *Chesapeake Bay Foundation, Inc. v. Virginia State Water Control Board,* 495 F.Supp. 1229, 1233 (E.D.Va.1980). State-issued NPDES permits must mandate, *inter alia,* compliance with the inspection, reporting, and monitoring requirements of the Act as outlined in 33 U.S.C. § 1318. *See* 33 U.S.C. § 1342(b)(2). Accuracy in the discharge-monitoring reports filed pursuant to section 1318 is ensured, or at least encouraged, by criminal penalties for false statements. *See* 33 U.S.C. § 1319(c)(2).

Under 33 U.S.C. § 1365, citizens are empowered to commence civil actions against any entity that fails to comply with the requirements of the Act or with orders issued by state or federal administrators. Citizens' suits can be maintained against a discharger that fails to comply either with the substantive effluent limitations contained in the Act, *see* 33 U.S.C. §§ 1311–1312, 1316–1317, 1328, 1344, or with the terms of its NPDES permit. *See* 33 U.S.C. § 1365(f). Therefore, a discharger that fails to file discharge-monitoring reports, or fails to file accurate reports, would be in violation of the provisions of its NPDES permit and would be subject to citizens' suits under 33 U.S.C. § 1365.

### B

#### (1)

■ In evaluating whether County Utilities was discharging pollutants during the two-year period at issue pursuant to a valid NPDES permit, as required by the Act, we must divide the period into two time frames.

The first runs from July 1, 1977, until January 9, 1978, when the SWCB issued to County Utilities an NPDES permit. County Utilities apparently [5] did not possess an NPDES permit during this time, but the district court held that County Utilities was nonetheless insulated from liability under 33 U.S.C. §§ 1311, 1342 for discharging without a permit because the NPDES permit issued in January 1978 by the SWCB was given retroactive effect to July 1, 1977. We find no support in the provisions of the Act for this proposition that retroactive application of an NPDES permit will excuse a discharger from the clear statutory mandate that "compliance with the permit program is a *prerequisite* to lawful discharge of pollutants." *National Resources Defense Council, Inc. v. Train,* 510 F.2d 692, 696 n. 8 (D.C.Cir.1975) (emphasis added). The Act provides a limited exception to compliance with the NPDES program where permit applications are pending before December 31, 1974, *see* 33 U.S.C. § 1342(k), but otherwise there is no shield from the requirement that all discharges—at the time made—must be pursuant to an NPDES permit. *See United States v. Frezzo Brothers, Inc.,* 602 F.2d 1123, 1128 (3d Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *National Resources Defense Council, Inc. v. Train,* 510 F.2d 692, 696 (D.C.Cir.1975). *Cf.* S.Rep. No. 370, 95 Cong., 1st Sess. 62, *reprinted in* 1977 U.S. Code Cong. & Ad.News 4326, 4387 (no relief under 33 U.S.C. § 1319 for permit applications filed after December 31, 1974, "since the discharger should have known that too little time remained from the date of his permit application to the date set out in [the] section"). Retroactive application of County Utilities's NPDES permit therefore cannot be a defense to allegations that it was discharging without a permit between July 1, 1977, and January 9, 1978.

■ The second time frame at issue spans the period that the NPDES permit issued to County Utilities was "stayed *ab*

---

**5.** Counsel could not agree on this factual issue on oral argument, and it remains open on re-

mand. *See supra* note 2.

*initio* " by the state court, from January 9, 1978, to June 8, 1979. Plaintiffs press the argument that, because the NPDES permit had been stayed, County Utilities was discharging without a permit, in violation of 33 U.S.C. §§ 1311, 1342. Without addressing whether a state court has power to stay an NPDES permit, *cf. United States v. Scott Paper Co.,* 10 Env't Rep.Cas. (BNA) 2017 (W.D.Wash.1977) (EPA can enforce compliance with permit terms that have been stayed by state court), we reject plaintiffs' contention because the state court order at issue stayed the substantive requirements of the NPDES permit and did not bear upon whether County Utilities had in fact been issued the statutorily mandated NPDES permit. The NPDES permit program serves at least two purposes: it ensures that dischargers are subjected to the scrutiny of the application process, *cf. United States v. Frezzo Brothers, Inc.,* 602 F.2d 1123, 1127 (3d Cir.1979) ("when no effluent limitations have been established for a particular business, the proper procedure is for the business to apply for a permit ... which allows the Administrator to establish interim operating conditions"), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); and it enables specification of discharge limitations, including more stringent state guidelines, for all effluent point sources. Both of these objectives had been entirely realized once the discharger here had obtained a valid permit. No statutory purpose would be advanced by imposing liability here upon County Utilities for discharging without a permit—in contrast to liability for failure to comply with the permit provisions—during the period of the state court stay of the NPDES permit.

(2)

■ The second prong of plaintiffs' argument on appeal is that County Utilities failed to file discharge-monitoring reports,[6] as required by its NPDES permit,[7] from July 1977 to June 1979. The essence of this contention is that the reports actually filed by County Utilities during this period were not the discharge-monitoring reports required by the Act,[8] see 33 U.S.C. § 1318, and hence were not subject to the penalty provisions of 33 U.S.C. § 1319 for false statements, and therefore failed to provide the fair basis for monitoring and enforcement proceedings by interested parties that the Act contemplates. Pursuant to 33 U.S.C. § 1365, plaintiffs clearly are entitled, via this suit, to obtain the filing of these reports as required by 33 U.S.C. §§ 1318, 1342 if they have not in fact been filed. It then will be open to plaintiffs on remand to attempt to prove that County Utilities's discharges into Buchanan Creek during the period at issue were in violation of the NPDES permit limitations. We of course express no opinion on whether this will be possible, but plaintiffs are entitled to have the base-line means for assessing the matter.

III

For the foregoing reasons, the judgment of the district court is reversed, and the

6. County Utilities contends that plaintiffs failed to allege this in the district court. Indeed, the district court proceeded on the view that plaintiffs' complaint alleged solely that County Utilities was discharging without an NPDES permit—and not that County Utilities was in violation of its permit.

We find, however, that plaintiffs properly pleaded a violation of the NPDES permit requirements through their general allegation that County Utilities was in violation of 33 U.S.C. § 1311. Section 1311 requires compliance with, *inter alia,* section 1342; section 1342, in turn, requires compliance with the discharge-monitoring provisions of section 1318 that are the focus of this prong of plaintiffs' argument.

Moreover, in light of our remand of this case, plaintiffs may properly amend their pleadings if necessary. *Cf. National Post Office Mail Handlers Local No. 305 v. United States Postal Service,* 594 F.2d 988, 991 (4th Cir.1979).

7. Beyond doubt, the decisions of the state court and the SWCB, giving retroactive effect to the NPDES permit, signify that County Utilities must comply—even if retroactively—with the various provisions of that permit, including the requirement of filing discharge-monitoring reports.

8. On remand, we expressly leave open the factual question whether County Utilities actually filed discharge-monitoring reports pursuant to 33 U.S.C. § 1318 during the period at issue.

case remanded for further proceedings consistent with this opinion.[9]

REVERSED AND REMANDED.

---

**9.** Prior to oral argument, the parties made two motions which we have considered in conjunction with the merits of this appeal. The motion of plaintiffs to strike references in County Utili- ties's brief to material not in the record is granted. Of course, County Utilities's motion to dismiss the appeal as moot is denied.